Filed 10/31/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BRITANI DAVIS,<br><br>        Plaintiff and Respondent,<br>v.<br><br>SHIEKH SHOES, LLC,<br><br>        Defendant and Appellant. | A161961<br><br>(San Francisco County<br>Super. Ct. No. CGC-19-574762) |

Nineteen months after plaintiff Britani Davis filed suit against her former employer Shiekh Shoes, LLC (Shiekh), Shiekh moved to compel arbitration of Davis's claims. The trial court denied the motion, finding Shiekh waived its right to invoke arbitration by unreasonably delaying its arbitration demand and acting inconsistently with an intent to arbitrate. We affirm.

**BACKGROUND**

In August 2018, Shiekh hired Davis as a sales associate. As part of her "new hire" paperwork, Davis and Shiekh signed an agreement "to resolve any and all disputes or claims each may have against the other which relate in any manner whatsoever as to Employee's employment . . . by binding arbitration" and to "waive their right to commence, be a party to, or class member of, any court action."

Davis's employment at Shiekh would prove to be short, however, as she resigned from the position a mere three months after being hired. According

to Davis, she was subjected to ongoing, sexually explicit, and demeaning comments, unwanted touching, and indecent exposure from her co-worker, Danilo Ensuncho, as well as other harassing conduct from Shiekh customers.

On March 25, 2019, Davis filed a complaint against Shiekh and Ensuncho. The first cause of action asserted violations of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) based on (1) sex discrimination; (2) sexual harassment; (3) retaliation; and (4) failure to take all reasonable steps necessary to prevent discrimination and harassment. The first FEHA violation was alleged against both Ensuncho and Shiekh, while the other three FEHA violations were alleged solely against Shiekh. Davis also asserted three separate causes of action against Shiekh for negligent hiring, supervision, and retention; wrongful constructive discharge in violation of public policy; and intentional infliction of emotional distress.

On May 12, service of summons was completed.[1]

On July 8, Shiekh, represented by counsel, answered Davis's complaint, asserting the arbitration agreement as an affirmative defense.

On July 30, Shiekh filed a case management statement, in which it requested a non-jury trial, estimated a trial between five to seven days, and noted that the case would be ready for trial "within 12 months of the date of the filing of the complaint." Shiekh also anticipated conducting written discovery, depositions, and expert discovery, and filing motions. Additionally, Shiekh noted its willingness to participate in a settlement conference, neutral evaluation, or binding private arbitration.

On August 14, the court scheduled a jury trial for July 20, 2020.

---

[1] The proof of service of summons is among the many items that Davis has requested we augment the record to include, which we did.

2

One month later, Davis commenced discovery, serving Shiekh with deposition notices, two sets of form interrogatories, special interrogatories, a request for admissions, and a request for production of documents. Two months after that, Shiekh served verified responses to the discovery requests. Although Shiekh objected on a variety of grounds, it did not assert a right to arbitrate Davis's claims.

In December, Davis and Shiekh engaged in meet-and-confer discussions regarding Shiekh's discovery responses, after which Shiekh supplemented its responses to Davis's special interrogatories, request for admissions, and request for production of documents.

On January 13, 2020, Shiekh filed a substitution of attorney, listing itself as its new attorney.

Meanwhile, Davis served written discovery on Ensuncho, who then moved for a stay of the proceedings and discovery, claiming that any forthcoming discovery responses concerning Davis's claims of sexual misconduct would potentially expose him to criminal liability. Based on this, Ensuncho sought a stay until the expiration of the statute of limitations for bringing criminal charges against him or, alternatively, until the resolution of the criminal proceeding in the event such charges were brought. Shiekh did not join in the motion or otherwise file a response. Davis opposed the motion, which the court later denied.

On June 22, Davis applied ex parte for an order to show cause why Shiekh's answer should not be stricken under Code of Civil Procedure sections 435 and 436. Under those provisions, Davis asserted, Shiekh, a business entity, could not represent itself in court in propria persona, but must appear through legal counsel. The court granted the application and set a hearing on the order to show cause.

On June 23, Davis filed an ex parte application to continue trial in light of Shiekh's failure to obtain counsel. The court denied the application because there was no stipulation among the parties for a continuance.

On June 30, Davis again sought to continue the trial date, this time by way of noticed motion. Shiekh filed no opposition. The court granted the motion and continued the trial date to September 28, 2020.

On July 14, Davis filed a dismissal with prejudice as to Ensuncho.

On August 24, seven months after being unrepresented by counsel, Shiekh filed a substitution of attorney designating Marc Cohen as its new attorney. The court then vacated the order to show cause on whether Shiekh's answer should be stricken.

On September 8, Davis filed another ex parte application to continue the trial date to May 10, 2021, attaching Davis's and Shiekh's stipulation. The stipulation stated "[Shiekh's] counsel requires additional time to complete necessary discovery and prepare for trial" and "the Parties have agreed to an extension of the trial date and related deadlines in order to complete discovery in this matter, as well as allow time to address and resolve any potential disputes." The court granted the application and continued the trial date to May 10, 2021.

On October 5, 2020—about 17 months after Shiekh was served with the complaint and seven months before the new trial date—Shiekh moved to compel arbitration and to stay the action pursuant to both the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) and California Arbitration Act (CAA) (Code Civ. Proc., § 1280 et seq.) Anticipating an argument from Davis that Shiekh had waived its right to invoke arbitration, Shiekh asserted its participation in the lawsuit thus far was de minimis and therefore it did not act inconsistently with an intent to arbitrate. Shiekh acknowledged it had

4

delayed in filing a motion to compel arbitration, but argued the delay was excusable, citing its lack of counsel for several months, pandemic-related disruptions to the court, and "the fact that [Ensuncho] seemed to be the primary target of [the] complaint, until his dismissal from the action on July 14, 2020." Shiekh further asserted the absence of prejudice to Davis from its conduct in the litigation was a factor weighing against finding waiver.

Davis opposed the petition, disputing Shiekh's assertions it had not waived its right to seek arbitration. Davis pointed to Shiekh's approximately one-and-a-half-year delay before filing its motion and its active participation in the lawsuit as evidence supporting waiver. In reply, Shiekh reiterated its claim that it "did the bare minimum that was necessary to avoid having a default entered against it."

On November 13, the court held the hearing on the motion, beginning with this: "[L]et me just say, to start, that this issue of waiver comes up at least once a month in this calendar. And I gotta tell you, . . . [¶] . . . [¶] I've never seen one that's as long as seventeen months . . . ." Following the parties' arguments, the court, by written order, denied the motion. The court highlighted Shiekh's delay in moving to compel arbitration and pre-trial activity in the lawsuit before concluding that Shiekh "fails the waiver test California's [S]upreme [C]ourt adopted in *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196: defendant's actions were 'inconsistent with the right to arbitrate'; defendant 'delayed for a long period of time'; litigation machinery has been substantially invoked'; 'judicial discovery procedures' took place; and the delay 'affected, misled, or prejudiced' plaintiff."

Shiekh appealed.

After the parties completed briefing, the United States Supreme Court

5

issued its decision in *Morgan v. Sundance, Inc.* (2022) 142 S.Ct. 1708 (*Morgan*), holding that under the FAA, courts may not condition a determination of waiver on prejudice. In light of this, we directed the parties to submit supplemental briefs on the applicability of the FAA and *Morgan*, if any, to the issues raised in the appeal. Both parties submitted briefs accordingly.

## DISCUSSION

### Standard of Review

We begin with a discussion of the applicable standard of review, a standard on which the parties disagree. Shiekh seeks to obtain de novo review of the order denying its motion, claiming the facts are not disputed and thus we are free to substitute our view for that of the trial court. Davis contends the facts are disputed, thereby requiring application of the substantial evidence standard of review. We agree with Davis.

As set forth in *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187 (*St. Agnes*), "Generally, the determination of waiver is a question of fact, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court. [Citations.] 'When, however, the facts are undisputed and only one inference may reasonably be drawn, the issue is one of law and the reviewing court is not bound by the trial court's ruling.' [Citation.]" (*Id.* at p. 1196.)

Here, the essential facts may not be in dispute, in the sense that no one doubts that party X did or did not do act Y on date Z. Nevertheless, even if there is no difference in opinion on such events or non-occurrences, the inferences to be drawn from the essential facts are conflicting. And where conflicting inferences may be drawn, the issue is reduced to whether the trial court's finding of waiver is supported by substantial evidence. (See *Davis v.*

6

*Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 211; 9 Witkin, Cal. Proc. (6th ed. 2022) Appeal, § 396.) In conducting that standard of review, "[w]e infer all necessary findings supported by substantial evidence [citations] and 'construe any reasonable inference in the manner most favorable to the [ruling], resolving all ambiguities to support an affirmance' [citation]." (*Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 443.)

**Applicability of the FAA**

We next determine whether the FAA or California law governs the inquiry into whether Shiekh has waived its right to arbitration. The parties agree, as do we, that the FAA controls.

The FAA applies to contracts that involve interstate commerce (9 U.S.C. §§ 1, 2), but since arbitration is a matter of contract, the FAA also applies if it is so stated in the agreement. (See *Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337, 355 ["[T]he presence of interstate commerce is not the only manner under which the FAA may apply. . . . [T]he parties may also voluntarily elect to have the FAA govern enforcement of the Agreement"].) Here, the parties' arbitration agreement contains a choice-of-law provision that states, "Company and Employee expressly agree that the Federal Arbitration Act governs the enforceability of any and all of the arbitration provisions of this Agreement . . . ." The language of this provision is unambiguous: the parties specified that the FAA governs the arbitration agreement. (Cf. *Victrola 89, LLC v. Jaman Properties 8 LLC*, *supra*, at pp. 343, 348 [contracting parties' explicit "reference to 'enforcement' under the FAA required the court to consider the [defendants'] motion to compel arbitration under the FAA"].)

Courts have recognized that where the FAA applies, whether a party has waived a right to arbitrate is a matter of federal, not state, law.

(See *Aviation Data, Inc. v. American Express Travel Related Services Co., Inc.* (2007) 152 Cal.App.4th 1522, 1535–1536 [noting that "waiver of the right to compel arbitration is not viewed as a question of substantive contract law" and that " 'it is federal law, not state, that governs the inquiry into whether a party has waived its right to arbitration' "], citing *Sovak v. Chugai Pharmaceutical Co.* (9th Cir. 2002) 280 F.3d 1266, 1270 [citing *Mastrobuono v. Shearson Lehman Hutton, Inc.* (1995) 514 U.S. 52, 60]; *Danny's Construction Co. v. Birdair, Inc.* (W.D.N.Y. 2000) 136 F.Supp.2d 134, 142; *Singer v. Jefferies & Co.* (1991) 78 N.Y.2d 76, 84.) Accordingly, federal law supplies the law on waiver in this case.[2]

**The Law on Waiver**

Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. . . ." (9 U.S.C. § 2.) However, like any contract right, the right to arbitrate may be waived—either expressly or by implication. (*St. Mary's Medical Center, Inc. v. Disco Aluminum Products Co.* (7th Cir. 1992) 969 F.2d 585, 587; *National Foundation for Cancer Research v. A.G. Edwards & Sons, Inc.* (D.C. Cir. 1987) 821 F.2d 772, 774 (*National Foundation*).)

"The Supreme Court has made clear that the 'strong federal policy in favor of enforcing arbitration agreements' is based upon the enforcement of contract, rather than a preference for arbitration as an alternative dispute resolution mechanism. [Citation.] Thus, the question of whether there has been waiver in the arbitration agreement context should be analyzed in much the same way as in any other contractual context. The essential question is

---

[2] The parties' briefs analyze waiver under both federal and California decisions.

8

whether, under the totality of the circumstances, the defaulting party has acted inconsistently with the arbitration right. [Citation.]" (*National Foundation*, *supra*, 821 F.2d at p. 774.)

In deciding waiver in this case, the trial court applied the multi-factor test in *St. Agnes*, which the California Supreme Court had adopted from the Tenth Circuit opinion in *Peterson v. Shearson/American Express, Inc.* (10th Cir. 1988) 849 F.2d 464 (*Peterson*) (usually referred to herein as the "*Peterson* waiver test" or "*Peterson* factors"). (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196, quoting *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 992 [in turn quoting *Peterson*].) Specifically, *Peterson* identified the following factors as relevant to assessing waiver claims: "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party." (*Peterson, supra*, 849 F.2d at pp. 467–468; *St. Agnes*, at p. 1196.) And, this test is substantially similar to the test adopted by most federal circuit courts. (*Zamora v. Lehman* (2010) 186 Cal.App.4th 1, 21–22 [citing sources surveying waiver tests used by federal circuits].)

The Tenth Circuit, along with eight other circuits including the Eighth and Ninth, have held that a party can waive its arbitration right by litigating

only when its conduct has prejudiced the other side.[3]  Two circuits have rejected that rule, holding that prejudice is not indispensable to waiver.[4]

Just a few months ago, the United States Supreme Court in *Morgan*, *supra*, 142 S.Ct. 1708 resolved that circuit split.  In a unanimous decision, the court sided with the minority of the circuit courts and held that under the FAA, courts may not "condition a waiver of the right to arbitrate on a showing of prejudice." (*Id.* at p. 1713.)  The court reviewed the Eighth Circuit's test for deciding waiver, which provided that "a party waives its contractual right to arbitration if it knew of the right; 'acted inconsistently with that right'; and—critical here—'prejudiced the other party by its inconsistent actions.' [Citation.]" (*Id.* at pp. 1711–1712.)  The Supreme Court in *Morgan* remarked that "outside the arbitration context, a federal court assessing waiver does not generally ask about prejudice," and generally, that "court[s] focus[ ] on the actions of the person who held the right," rather than the "effects of those actions on the opposing party." (*Id.* at

---

[3] *Joca-Roca Real Estate, LLC v. Brennan* (1st Cir. 2014) 772 F.3d 945, 948; *O.J. Distributing, Inc. v. Hornell Brewing Co.* (6th Cir. 2003) 340 F.3d 345, 355–356; *PaineWebber Inc. v. Faragalli* (3d Cir. 1995) 61 F.3d 1063, 1068–1069; *S & H Contractors, Inc. v. A. J. Taft Coal Co.* (11th Cir. 1990) 906 F.2d 1507, 1514; *Miller Brewing Co. v. Fort Worth Distributing Co.* (5th Cir. 1986) 781 F.2d 494, 497; *ATSA of California, Inc. v. Continental Ins. Co.* (9th Cir. 1983) 702 F.2d 172, 175; *Carolina Throwing Co. v. S & E Novelty Corp.* (4th Cir. 1971) 442 F.2d 329, 331 (*per curiam*); *Carcich v. Rederi A/B Nordie* (2d Cir. 1968) 389 F.2d 692, 696 (*Carcich*).

[4] *St. Mary's Medical Center, Inc. v. Disco Aluminum Prods. Co.*, *supra*, 969 F.2d at p. 590 [Seventh Circuit]; *National Foundation*, *supra*, 821 F.2d at p. 774 [D.C. Circuit].  For example, the D.C. Circuit in *National Foundation* held that while prejudice is not necessary to establish waiver, "a court may consider prejudice to the objecting party as a relevant factor among the circumstances that the court examines in deciding whether the moving party has taken action inconsistent with the agreement to arbitrate." (*National Foundation*, at p. 777.)

p. 1713.) Thus, "in demanding [proof of prejudice] before finding the waiver of an arbitration right, the Eighth Circuit applies a rule found nowhere else—consider it a bespoke rule of waiver for arbitration." (*Ibid.*)

The high court then traced the Eighth Circuit's prejudice requirement to a "decades-old Second Circuit decision"—*Carcich, supra,* 389 F.2d 692. (*Morgan*, *supra*, 142 S.Ct. at p. 1713.) In *Carcich*, the Second Circuit relied on the " 'overriding federal policy favoring arbitration' " to conclude that "waiver of the right to arbitrate 'is not to be lightly inferred,' " such that " 'mere delay' in seeking a stay of litigation, 'without some resultant prejudice' to the opposing party, 'cannot carry the day.' " (*Morgan*, at p. 1713, quoting *Carcich*, at p. 696.)

The Supreme Court in *Morgan* rejected *Carcich*'s analysis and clarified that the FAA's "policy favoring arbitration" centers around treating arbitration agreements like all other contracts; it does not contain a preference for arbitration as an alternative dispute resolution mechanism. (*Morgan*, *supra*, 142 S.Ct. at pp. 1713–1714.) For this reason, the court held "the Eighth Circuit was wrong to condition a waiver of the right to arbitrate on a showing of prejudice," vacated the judgment, and remanded the case. (*Id.* at pp. 1712–1714.) On remand, the court explained, the Eighth Circuit's current waiver inquiry, "[s]tripped of its prejudice requirement[,] . . . would focus on [the defendant's] conduct," namely by asking: "Did [the defendant] knowingly relinquish the right to arbitrate by acting inconsistently with that right?" (*Id.* at p. 1714.)[5]

_____

[5] The California Supreme Court has not yet addressed *Morgan*. Thus, it has not spoken on whether prejudice remains a "critical" consideration in the waiver inquiry under California law, as it held prior to *Morgan*. (See *St. Agnes*, *supra*, 31 Cal.4th at pp. 1203–1204.) (A petition for review has been granted in *Quach v. California Commerce Club, Inc.* (2022)

11

In their supplemental briefs, the parties agree that *Morgan* is controlling, prejudice therefore is no longer required to demonstrate a waiver of one's right to arbitration, and the waiver inquiry should instead focus on the actions of the holder of that right. The parties also appear to agree that the *Peterson* factors "minus the prejudice requirement" are unaffected by *Morgan* and remain proper considerations in the waiver inquiry.

**The Trial Court Properly Denied the Motion to Compel Arbitration**

When the trial court ruled on Shiekh's motion to compel arbitration, it did not have the benefit of the Supreme Court's decision in *Morgan*, which was issued after the parties completed briefing in this appeal. Consequently, the trial court considered the factors set forth in the *Peterson* waiver test, including prejudice to Davis. In particular, it found Shiekh had waived its right to invoke arbitration because its actions were " 'inconsistent with the right to arbitrate' "; it" 'delayed for a long period of time' "; the " 'litigation machinery ha[d] been substantially invoked' "; " 'judicial discovery procedures' took place"; and "the delay 'affected, misled, or prejudiced' [Davis]."

To the extent the court conditioned waiver on a showing of prejudice,[6] its waiver finding was unauthorized under the FAA, as articulated in *Morgan*. (See *Morgan*, *supra*, 142 S.Ct. at pp. 1712–1714.) Nonetheless,

_____

78 Cal.App.5th 470, review granted Aug. 24, 2022, S275121, regarding the effect of *Morgan*, if any, on *St. Agnes*.) Davis argues "to the extent California law imposes a prejudice requirement for arbitration-waiver disputes but does not impose a prejudice requirement for other contract-waiver disputes, that law is preempted by the FAA, whose equal-treatment principle prohibits application of arbitration-specific contract principles." We need not address this contention, since federal law directly controls in this case.

[6] A finding that we, in any event, would conclude is supported by substantial evidence for the reasons discussed in footnote 8, *post*.

neither party requests a remand due to the change in the law. Instead, both parties urge us to review the order in light of other, proper considerations for determining waiver. In its opening brief, Shiekh presented two principal arguments, headed as follows: "Shiekh Did Not Engage in Acts Inconsistent With the Right to Arbitrate" and "Compelling Arbitration Would Not Result in Unfair Prejudice to Davis." Later, in its supplemental brief, Shiekh explains that its argument regarding prejudice is no longer applicable under *Morgan*, "but the crux of [its] argument that [it] did not engage in acts inconsistent with the right to arbitrate is still consistent with *Morgan*." On this basis, Shiekh contends, the court's waiver determination was not supported by the record. Davis counters that "[b]ecause the trial court found all of the traditional elements of contractual waiver analysis had been satisfied here[,] in addition to prejudice, . . . substantial evidence supports the trial court's finding of waiver, and this Court should therefore affirm . . . ."

As the parties suggest, even if the trial court may have improperly conditioned its waiver determination on a showing of prejudice, its decision may still be affirmed so long as any other correct legal reason exists to sustain it. (See *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18–19 [" 'No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained' "]; accord, *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980–981.) Accordingly, we determine whether substantial evidence supports the court's ruling in light of the *Peterson* factors other than prejudice. Specifically, we focus on whether Shiekh acted inconsistently with the right to arbitrate, the one factor with which Shiekh

13

primarily takes issue on appeal. And conclude it did.

To begin with, Shiekh's lengthy delay in moving to compel arbitration cannot be squared with an intent to arbitrate. By the time Shiekh filed its motion, 17 months had elapsed since it was served with the complaint.[7] This length of time, in the court's view, was significant, as reflected in its comments at the hearing on Shiekh's motion: "[T]his issue of waiver comes up at least once a month in this calendar. And I gotta tell you . . . [¶] . . . [¶] . . . I've never seen [a delay] that's as long as seventeen months . . . ." As the litigation progressed for 17 months, Shiekh undertook a number of responses to the lawsuit, but sat on its hands with regard to its right to arbitration. This was so, even though Shiekh presumably was aware of its right to arbitrate when it asserted the parties' arbitration agreement as an affirmative defense in its answer to the complaint. In short, Shiekh's "extended silence and much delayed demand for arbitration" cuts strongly in favor of a finding of waiver. (*Van Ness Townhouses v. Mar Industries Corp.*

---

[7] Shiekh suggests we should measure the delay from the time it first appeared in the case (July 2019) until the time its attorney tried to obtain Davis's agreement to submit the case to arbitration (August 2020)—a period of about 14 months. We disagree. Shiekh does not explain why the clock started to run from its appearance in the case, rather than when the complaint was filed or served. We are also unpersuaded by Shiekh's assertion that the period of delay ended in August 2020, not October 2020 when it filed its motion to compel arbitration. Although Shiekh claims it had told Davis of its intent to arbitrate in August 2020, that representation was not placed on the record, and thus not made known to the court, until it filed the motion in October 2020. "In [a party's] pre-trial huffery and puffery, [it] may float all sorts of intentions, serious or not," but a court deciding waiver "is properly concerned only with intentions placed upon the record." (*Zuckerman Spaeder, LLP v. Auffenberg* (D.C. Cir. 2011) 646 F.3d 919, 923; see *ibid.* [focusing on a party's *filings* to determine whether he had waived the right to arbitrate].) In any event, whether the delay was 14 or 17 months, we would reach the same conclusion.

(9th Cir. 1988) 862 F.2d 754, 759; see also *Welborn Clinic v. Medquist, Inc.* (7th Cir. 2002) 301 F.3d 634, 637 ["[L]engthy delay can lead to an implicit waiver of arbitration"].)

Shiekh, as it did below, attempts to justify its delay on three bases: its lack of counsel for several months during the case, pandemic-related reductions in court operations, and the status of its co-defendant Ensuncho as "the primary target" of Davis's claims up until his dismissal from the case. The trial court expressly rejected the first two, stating: "Attempting to excuse its delay, [Shiekh] says its first counsel 'substituted out' in January 2020, but does not explain the preceding months or why it delayed in retaining new counsel. [Shiekh] also notes that 'non-essential court operations' paused from March 16 to June 1, 2020. However, this case is in the pre-trial phrase and this court's law and motion department was deciding motions throughout, so the court cannot be blamed for [Shiekh's] delay." Shiekh does not dispute the court's findings.

Shiekh's third proffered explanation for its delay in seeking arbitration—that Ensuncho seemed to be the "primary target" of Davis's complaint—is specious. Although the court did not expressly address this explanation, which Shiekh raised in its motion, we may infer from the court's denial of the motion that it rejected the explanation. The court's implied finding is supported by the record. Only one claim in the complaint—sexual harassment in violation of FEHA—is alleged against Ensuncho. Every cause of action and its subparts, including the sexual harassment claim, is alleged against Shiekh. It is thus neither supported nor reasonable for Shiekh to claim that Ensuncho was the "primary target" of Davis's claims.

Even accepting Shiekh's belief that Ensuncho was the primary target of Davis's claims, we are not required to draw the inference Shiekh wishes.

15

That is, it appears Shiekh asks us to infer that because Ensuncho was the main defendant in the case, then Shiekh had no reason to, and thus did not, actively participate in the litigation. However, one could also infer that Shiekh's explanation amounts to it saying that it wanted to see how the case would proceed vis-à-vis Davis and Ensuncho before deciding whether it would be better off in arbitration. (Cf. *Cabinetree of Wisconsin v. Kraftmaid Cabinetry* (7th Cir. 1995) 50 F.3d 388, 391 [defendant's explanation for delay of wanting to " 'weigh its options' " was "the worst possible reason for delay. It amounts to saying that [it] wanted to see how the case was going in federal district court before deciding whether it would be better off there or in arbitration. It wanted to play heads I win, tails you lose"].) But even if the inference Shiekh asks us to draw were reasonable, it is not one that we could make: under the applicable standard of review, we must draw all reasonable inferences in support of the ruling. In short, Shiekh has failed to provide a reasonable explanation for its delay in demanding arbitration.

As courts have found, the absence of a reasonable explanation for delay is a significant factor weighing in favor of finding waiver. (See *Smith v. GC Services Limited Partnership* (7th Cir. 2018) 907 F.3d 495, 499–500 [finding defendant's "entirely inadequate" explanation for five-month delay was factor showing defendant acted inconsistently with right to arbitrate]; see also *Gray Holdco, Inc. v. Cassady* (3d Cir. 2011) 654 F.3d 444, 455 & fn. 9 ["It is significant that . . . Gray offered no explanation to the District Court for its delay in waiting ten months after filing suit . . . and that it certainly has not offered such an explanation on this appeal"].)

The record also supports the court's finding that, on top of Shiekh's extended period of unjustified silence, Shiekh's conduct was inconsistent with its alleged intent to arbitrate. As the court observed, Shiekh appeared for a

16

case management conference, demanded a trial, gave its own estimate of the time of trial, and represented it would be participating in written discovery, depositions, and expert discovery. Then, after the court scheduled a jury trial, Shiekh engaged in rounds of discovery. It responded to multiple sets of interrogatories, a request for admissions, and a demand for productions of documents, met and conferred on those responses, and then supplemented them. Although Shiekh objected to the discovery on a variety of grounds, it never once suggested that discovery should be barred because the case had to be arbitrated.

Shiekh's silence persisted in other aspects of the case, as it failed to respond to or join in Ensuncho's motion for a stay of proceedings. Shiekh also did not oppose Davis's multiple requests to continue trial. In fact, Davis's latest request for a trial continuance attached a stipulation between Davis and Shiekh. That stipulation stated Shiekh's counsel "require[d] additional time to complete necessary discovery and prepare for trial" and "the Parties have agreed to an extension of the trial date and related deadlines in order to complete discovery in this matter, as well as allow time to address and resolve any potential disputes." This was an affirmative averment that Shiekh intended to proceed to trial on the merits and that the court should structure the case accordingly. Although it would not have been imprudent for Shiekh to preserve its right to a jury trial and ability to conduct discovery in the event its motion proved unsuccessful, it did so without making known to the court its intent to seek arbitration. The act of preserving its rights to a jury trial and discovery while remaining silent on arbitration was inconsistent with a right to arbitrate.

In light of Shiekh's nearly one-and-a-half-year delay in moving to compel arbitration, request for trial, active participation in discovery,

17

acquiescence to the trial and discovery schedule, and court appearances, the trial court had ample evidence from which to conclude Shiekh's actions were inconsistent with an intent to arbitrate. Indeed, other courts have found that similar, or even shorter, periods of delay, and comparable litigation activity, were sufficient to justify a waiver of arbitration. (See, e.g., *Cabinetree of Wisconsin v. Kraftmaid Cabinetry*, *supra*, 50 F.3d at pp. 389–391 [trial date was set and discovery proceeded before defendant "dropped a bombshell into the proceedings" by moving to stay nine months after lawsuit filed]; *United States for the Use of Duo Metal & Iron Works, Inc. v. S.T.C. Construction Co.* (E.D.Penn. 1979) 472 F.Supp. 1023, 1025 [19-month delay; defendant answered interrogatories propounded by other parties and produced documents, conducted a deposition, and attended pretrial conferences].)

Despite all of this, relying on several Ninth Circuit cases, Shiekh contends it has never acted inconsistently with its right to arbitrate. None is availing. For example, Shiekh cites *Britton v. Co-op Banking Group* (9th Cir. 1990) 916 F.2d 1405 (*Britton*), in which the Ninth Circuit reversed the district court's waiver finding in part because the defendant's pre-trial actions—his resistance to discovery requests, pursuit of a court-appointed attorney, and application for in forma pauperis status—were not inconsistent with his pursuit of arbitration. (*Id.* at p. 1413.) Such actions, the appellate court held, reflected only a "determination to avoid or frustrate the litigation" rather than a strategic decision to "active[ly] litigat[e]." (*Ibid.*) *Britton* does not assist Shiekh. Shiekh, unlike the defendant in *Britton*, did not resist the litigation; it voluntarily acceded to it by, for instance, engaging in rounds of discovery and requesting a trial.

Shiekh also cites *Newirth v. Aegis Senior Communities, LLC* (9th Cir. 2019) 931 F.3d 935 (*Newirth*), *Martin v. Yasuda* (9th Cir. 2016) 829 F.3d

18

1118 (*Martin*), and *Morvant v. P.F. Chang's China Bistro, Inc.* (N.D.Cal. 2012) 870 F.Supp.2d 831 (*Morvant*). In *Newirth* the defendant filed a motion to compel arbitration and a motion to dismiss, but then withdrew those motions. (*Newirth, supra*, 931 F.3d at pp. 938–939.) Defendant again moved to dismiss the second amended complaint and over the next eleven months, while the motion was pending, the parties engaged in discovery and settlement negotiations. (*Id.* at p. 939.) The district court denied the motion to dismiss, after which the defendant filed a renewed motion to compel arbitration. (*Ibid.*) The Ninth Circuit held the defendant acted inconsistently with its right to arbitration by litigating for two years and filing a renewed motion to compel arbitration only after an adverse ruling. (*Id.* at p. 942.)

In *Martin* the Ninth Circuit found the defendants acted inconsistently with an intent to arbitrate when they spent seventeen months litigating a case, including "filing a motion to dismiss on a key merits issue," and had also indicated to the district court "that they were likely 'better off' in federal court." (*Martin, supra*, 829 F.3d at p. 1126.) And in *Morvant* the district court granted the defendant's motion to compel arbitration, rejecting the plaintiff's argument that the defendant's removal of the case prior to compelling arbitration was "neither uncommon nor inconsistent with the right to arbitrate." (*Morvant, supra*, 870 F.Supp.2d at p. 846.)

Shiekh seems to suggest that because it did not file any motions seeking a judicial decision on the merits, it could not have waived its right to arbitrate. We disagree with such a suggestion. While the cases above illustrate that the filing of a motion to dismiss or other motion on the merits may be one factor in determining waiver, none of them declares such factor dispositive. Rather, as *Martin* held, "seeking a decision on the merits of an

19

issue *may* satisfy this element." (*Martin*, *supra*, 829 F.3d at p. 1125, italics added.)  Certainly, the cases do not hold that participating in discovery and assenting to pretrial orders, rather than filing a dispositive motion, can never amount to a waiver of arbitration.

Moreover, the fact that the specific circumstances in this case are not mirrored in *Newirth, Martin*, or *Morvant* does not mean that this case is devoid of sufficient evidence to support waiver.  The cited decisions were deeply bound up in their individual circumstances; indeed, *Newirth* cautions us to examine each case in context.  (See *Newirth*, *supra*, 931 F.3d at p. 941 [In "determin[ing] whether a party has engaged in acts that are inconsistent with its right to arbitrate, . . . we consider the totality of the parties' actions"].)  As discussed, Shiekh's actions demonstrate it may have realized its arbitration rights too late, or that it sought to resort to arbitration only upon realizing that the proceedings in court would not be advantageous to it.  Either way, we cannot fault the trial court for characterizing the totality of Shiekh's actions as inconsistent with an intent to arbitrate.[8]

## DISPOSITION

The order denying the motion to compel arbitration is affirmed.  Davis

---

[8] As noted in footnote 6, *ante*, even if we were to also consider the court's prejudice finding, we would conclude substantial evidence supports it.  Shiekh's extended, unreasonable delay in moving to compel arbitration not only forced Davis to incur substantial expenses, but also deprived her of the advantage of arbitration as a speedy means of dispute resolution.  (See *Martin*, *supra*, 829 F.3d at pp. 1127–1128.)  In a similar vein, by requesting a trial and later stipulating to a trial continuance because it needed time to prepare for trial, Shiekh misled Davis into expecting the parties would prepare the case for presentation to a jury and not an arbitrator, causing the preparation to be considerably different.  (See *Stolt-Nielson S.A. v. AnimalFeeds International Corp.* (2010) 559 U.S. 662, 685 ["In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution"].

shall recover her costs on appeal.

 

 

_____
Richman, Acting P. J.

We concur:

_____
Miller, J.

_____
Mayfield, J. *

*Davis v. Shiekh Shoes, LLC* (A161961)

*Judge of the Mendocino Superior Court,assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| | |
|---|---|
| Trial Court: | San Francisco County Superior Court |
| Trial Judge: | Honorable Richard Ulmer; Honorable Ethan Schulman |
| Attorney for Plaintiff and Respondent, Britani Davis: | Matern Law Group, PC, Matthew J. Matern; Joshua D. Boxer; Sara B. Tosdal; Kiran Prasad |
| Attorney for Defendant and Appellant, Shiekh Shoes LLC | Cohen Law Group, Marc Cohen. |